UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
MICHELLE GOTTHELF,

                Plaintiff,

            v.

NEWS CORPORATION, NYP HOLDINGS,
INC., COL ALLAN and KEITH POOLE, in
their individual and professional capacities,

                Defendants.
---------------------------------------------------------X

Case No.:

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Michelle Gotthelf, by and through her attorneys, Wigdor LLP, as and for her Complaint against Defendants News Corporation, NYP Holdings,[1] Col Allan, in his individual and professional capacities, and Keith Poole, in his individual and professional capacities, (together, "Defendants") alleges as follows:

## PRELIMINARY STATEMENT

1. "We Should Sleep Together." That is how Defendant Col Allan, then Editor-in-Chief of the NY Post, propositioned his direct report, Plaintiff Michelle Gotthelf, for sex. Mr. Allan's request that Ms. Gotthelf sleep with him was the culmination of several years of sex-based harassment that Ms. Gotthelf had to endure because, according to Mr. Allan, Ms. Gotthelf reminded him of his wife. During that period, Mr. Allan would degrade women generally ("skanks, "stupid women" and "sneaky lesbian") and humiliate Ms. Gotthelf specifically in front of her male peers ("get the fuck out").

---

[1] News Corporation and NYP Holding, Inc., are collectively referenced herein as the "NY Post" or the "Company."

2. Ms. Gotthelf finally complained about the harassment. But that only made things worse. While Mr. Allan "retired" and was given a rousing send off, Ms. Gotthelf's responsibilities and authority were steadily eroded, often in favor of substantially less qualified men. Ms. Gotthelf's complaints about retaliation and discrimination were largely met with indifference and, in one instance, she was told to "stop complaining."

3. Mr. Allan also continued his abusive behavior, prank calling Ms. Gotthelf (only days after she buried her father) to yell at her and then tell her, "I love you." Once again, Ms. Gotthelf's protest was met with shrugged shoulders or, as the Company explained, "It was just Col being Col. He hasn't changed."

4. To add insult to injury, the NY Post decided to rehire Mr. Allan, falsely telling Ms. Gotthelf that her harasser would only be a "consultant" and promising that "[u]nder no circumstances" would she have to report to him. In fact, Mr. Allan became a *de facto* supervisor, often giving Ms. Gotthelf directions, such as to "get rid of" a story reporting rape allegations against then President, Donald Trump.

5. In early 2021, the Company effectively demoted Ms. Gotthelf, hiring Defendant Keith Poole to be her new boss. Mr. Poole, who had spent weeks being "briefed" by Mr. Allan, probed Ms. Gotthelf about what happened between her and Mr. Allan. In November 2021, Ms. Gotthelf revealed to Mr. Poole that Mr. Allan sexually harassed her, specifically propositioning her for sex. She told Mr. Poole that she did not want to go through that again.

6. Mr. Poole fired Ms. Gotthelf two short months later, ending her twenty-plus year career at the Company.

7. Defendants' conduct violated the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL").

## ADMINISTRATIVE PROCEDURES

8. Contemporaneous with the filing of this Complaint, Plaintiff will file a Charge of Discrimination (the "Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").  Upon issuance of a Notice of Right to Sue or other adjudication of the Charge, Plaintiff shall amend her claims under Title VII.

9. Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this action.

10. Plaintiff has complied with all other prerequisites to filing this action.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is a diversity of citizenship among the parties and this action involves an amount in controversy that exceeds $75,000, excluding interests and costs.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred here.  The Company has business operations located in this District, and Plaintiff's employment and performance occurred in this District.

**PARTIES**

13. Plaintiff Michelle Gotthelf is the former Editor-in-Chief of NYPost.com and all of its digital platforms. At all relevant times, Plaintiff was an "employee" and/or "eligible employee" of Defendants under all applicable statutes. Plaintiff resides in New Jersey.

14. Defendant News Corporation is a Delaware-registered company with its headquarters in New York, NY. At all relevant times, News Corporation was an "employer" and/or "covered employer" under all applicable statutes.

15. Defendant NYP Holdings, Inc., is a Delaware-registered company with its headquarters in New York, NY. NYP Holdings, Inc., is the publisher and owner of the New York Post newspaper, NYPost.com, PageSix.com, Decider.com and Post Studios, among others. At all relevant times, NYP Holdings, Inc., was an "employer" and/or "covered employer" under all applicable statutes.

16. Defendant Col Allan is the former Editor-in-Chief of the NY Post. At all relevant times, Mr. Allan met the definition of Plaintiff's "employer" under all applicable statutes. Upon information and belief, Mr. Allan is a resident of New York or Sydney, Australia.

17. Defendant Keith Poole is the Editor-in-Chief of the New York Post Group, which consists of the New York Post newspaper, the Post Digital Network (including the NYPost.com, PageSix.com and Decider.com), Post Studios and related mobile and tablet apps and social media channels. At all relevant times, Mr. Poole met the definition of Plaintiff's "employer" under all applicable statutes. Upon information and belief, Mr. Poole is a resident of New York or London, England.

## FACTS

### I. BACKGROUND

18. In 2000, the NY Post hired Ms. Gotthelf as a feature reporter for the New York Post newspaper. Because of her excellent work, Ms. Gotthelf earned successive promotions to Associate Metro Editor (2001) and Deputy Metro Editor (2004).

19. As Deputy Metro Editor, Ms. Gotthelf was second-in-command under then Metro Editor, Jesse Angelo, and performed Mr. Angelo's responsibilities, including running the newsroom on holidays and weekends.

### II. "MATE, I WANTED A STRONG MAN IN THE JOB"

20. In early 2007, Mr. Allan, then Editor-in-Chief, promoted Mr. Angelo from Metro Editor to Executive Editor. Typically, the Deputy Metro Editor (in this case, Ms. Gotthelf) would have been promoted to the Metro Editor position.

21. Mr. Allan, however, refused to promote Ms. Gotthelf. According to Mr. Allan, he "wanted a strong man in the job" and instead promoted a substantially less-qualified man who, at the time, was the NY Post's business editor. Unlike Ms. Gotthelf, the man had little, if any, experience in non-business news and no experience running a newsroom.

22. Nevertheless, Rupert Murdoch, News Corporation's founder and the Executive Chairman of the Board of Directors, came to the newsroom to make a "major announcement" about the two men who had been promoted.

23. Ms. Gotthelf, who was the logical successor to the Metro Editor position and often performed the job successfully in Mr. Angelo's absence, felt humiliated as Mr. Murdoch lauded the two men as the NY Post's new dream team.

24. By December 2007, it was clear that Mr. Allan's hand-picked male candidate was incompetent and, thus, forced to leave.

25. Mr. Allan, acknowledging that he had passed Ms. Gotthelf over in favor of a less-qualified man, decided that he would "make good" and promote Ms. Gotthelf to Metro Editor.

### III. "SKANKS," "STUPID WOMEN" AND "SNEAKY LESBIANS"

26. Over the next near decade, Ms. Gotthelf performed an extraordinary job. Indeed, Mr. Allan referred to her as a "star."

27. Nonetheless, beginning in or about 2013, Mr. Allan created a hostile work environment for his direct report.

28. Mr. Allan, delighted in degrading Ms. Gotthelf, and women generally, in front of her mostly male peers. For example, Mr. Allan would refer to women in news stories as "skanks" or "stupid women." He described a female NY Post editor as a "sneaky lesbian." He likewise told Ms. Gotthelf that Mr. Murdoch "doesn't like many women."

29. Mr. Allan also despised the LGBTQ+ community. For instance, he refused to put New York's historic legalization of same-sex marriage on the front page, asking, "What will these people be marrying next, animals?"

30. Mr. Allan's behavior turned especially abusive when his marriage began to dissolve. During routine newsroom debates, Mr. Allan would ask Ms. Gotthelf, "Who do you think you are, my wife?"

31. Mr. Allan ultimately admitted the abusive behavior towards Ms. Gotthelf was based on her sex. Mr. Allan confessed that he mistreated Ms. Gotthelf because she reminded him of his wife, "fiery."

32.     Ms. Gotthelf complained to her then boss, Mr. Angelo, who acknowledged the abuse but shrugged, "Not much I can do."

## IV.     "WE SHOULD SLEEP TOGETHER"

33.     Mr. Allan's sexual harassment peaked in the fall of 2015.  During an off-site dinner meeting among editors to discuss news coverage, Mr. Allan made a point to be physically close to Ms. Gotthelf, often hovering over her.

34.     Afterward, Mr. Allan requested that Ms. Gotthelf join him for drinks.  She reluctantly agreed because he was her boss.

35.     When the two were alone, Mr. Allan steered the conversation towards sex.  He peppered Ms. Gotthelf with questions about her long-term boyfriend, how long they had been together (15 years) and whether they still slept together.

36.     Mr. Allan then turned the conversation to his own sex life, stating that his wife had had a "lover" for quite some time and that she stopped sleeping with him years ago.

37.     Ms. Gotthelf responded, jokingly, "You should get yourself a lover.  That'll fix her."

38.     Mr. Allan then propositioned Ms. Gotthelf for sex, asking, "What about you?"  Ms. Gotthelf was stunned.  But Mr. Allan persisted.  "We should sleep together."

39.     Ms. Gotthelf rejected Mr. Allan's unwelcome advances, stating, "That's not going to happen."

40.     Mr. Allan nevertheless continued to pursue Ms. Gotthelf, stating that he slept with another female NY Post employee.

41.     Stunned, Ms. Gotthelf left the bar and grabbed the first taxi she could find to get away from Mr. Allan.

V. **"GET THE FUCK OUT"**

42. The next day, Ms. Gotthelf reported Mr. Allan's conduct to two NY Post editors, who urged her to report the harassment to Human Resources ("HR").

43. Ms. Gotthelf, however, was afraid. She told her two colleagues that Mr. Allan was likely to retaliate against her if she reported his behavior. She hoped to "ride it out" and that things would get better.

44. They did not. Mr. Allan became even more abusive after Ms. Gotthelf rejected his advances. He refused to make eye contact with Ms. Gotthelf and often killed stories that she supported for no apparent reason.

45. On one occasion, he ripped up a list of stories that Mr. Gotthelf had prepared and screamed at her to "get the fuck out." The other editors – almost all men – sat in disbelief as Mr. Allan publicly humiliated Ms. Gotthelf.

46. The following day, Ms. Gotthelf complained to HR about the hostile work environment. She disclosed to then Head of HR, Melinda Goldman, and in-house counsel, Jordan Lippner, the bullying and harassment she experienced.

47. She also complained to Mr. Angelo, who promised that Ms. Gotthelf would not be retaliated against and that her complaint would be kept confidential.

48. In fact, the NY Post told Mr. Allan that Ms. Gotthelf complained about his harassment after which he was forced to "retire."

VI. **CHEERS FOR THE HARASSER**

49. Despite having to resign in disgrace, the NY Post, and especially Mr. Murdoch, did all they could to protect Mr. Allan's reputation.

8

50. On or about April 15, 2016, Mr. Murdoch once again came to the newsroom to make a "big announcement." He announced that Mr. Allan had decided to "retire" after "many years of exemplary service." Mr. Murdoch's employees were forced to clap and cheer for Mr. Allan who, unbeknownst to them, had been forced to resign in disgrace.

51. Nevertheless, Mr. Murdoch publicly lauded Mr. Allan, calling him "one of the most outstanding editors of his generation" and a "great friend and colleague."

52. Mr. Murdoch also announced that another man, Sunday Editor Steve Lynch, would be promoted to replace Mr. Allan as Editor-in-Chief.

## VII. "STOP COMPLAINING"

53. In an obvious effort to protect Mr. Allan and keep Ms. Gotthelf quiet, the NY Post offered Ms. Gotthelf the title of Managing Editor.

54. The Company also agreed to increase Ms. Gotthelf's salary after she learned that she had been underpaid for years.

55. Despite the more impressive title and higher pay, the NY Post began to diminish Ms. Gotthelf's role in retaliation for her complaints about Mr. Allan's sexual harassment.

56. In particular, the Company set up a separate team of web reporters who did not report to Ms. Gotthelf and had the unilateral authority to post their stories online. (As Managing Editor, Ms. Gotthelf should have been responsible for all news stories published by reporters.)

57. Ms. Gotthelf's reporters, however, were relegated to the back of the newsroom. As a result, 25-year-old reporters (mostly men) had more say on web news than Ms. Gotthelf, the newspaper's female Managing Editor. Ms. Gotthelf was, once again, humiliated.

58. Ms. Gotthelf complained about the unlawful treatment. For example, she wrote to her supervisor that the new structure where reporters could go around her "was absolutely demeaning for a woman who's been running the newsroom for a decade."

59. She again protested that "men on the web team – with a fraction of my news experience" – were giving her direction.

60. She further protested that since her complaint of harassment, she has watched her job slowly erode along with her status in the newsroom. She expressed her belief that she was being "punished" for making a complaint; that all the people taking away parts of her job are men with only a fraction of her news experience; and that it was "gender-based" since no one could give her a convincing explanation for why this was happening. Ms. Gotthelf was clear that she did not "deserve the way [she] was being treated."

61. Ms. Gotthelf's complaints fell largely on deaf ears. Indeed, she was told, among other things, to "stop complaining."

### VIII.  "JUST COL BEING COL. HE HASN'T CHANGED"

62. On December 29, 2018, Ms. Gotthelf's father passed away. She was devastated.

63. She returned to work on January 3, 2019. After her shift that evening, she received a call from Mr. Allan – who had supposedly "retired" – screaming at her about an unidentified Daily News story that the NY Post had supposedly missed.

64. At the end of his tirade, Mr. Allan told Ms. Gotthelf, "I love you."

65. The next day, Ms. Gotthelf learned that Mr. Allan had been "boozing" and prank called her. The Company shrugged off the harassment, reasoning that "It was just Col being Col. He hasn't changed."

IX.    **THE NY POST REHIRES THE HARASSER**

66. In early 2019, Ms. Gotthelf learned that the NY Post had decided to rehire her harasser, Mr. Allan.

67. Ms. Gotthelf was stunned. The man who had sexually propositioned her and, only weeks earlier, prank called her to say "I love you," would be returning to humiliate her once again.

68. Ms. Gotthelf raised her concerns about retaliation to management. News Corporation's CEO Robert Thompson and its Head of HR Dana Ritzcovan assured Ms. Gotthelf (falsely) that Mr. Allan would only be a "consultant" and that she would not have to report to him.

69. To protect herself, Ms. Gotthelf negotiated a new employment contract, which expressly stated that "[u]nder no circumstances" would she report to Mr. Allan.

70. The Company's promises, however, proved hollow.

X.    **"IF COL TELLS YOU TO DO SOMETHING, YOU DO IT"**

71. It became increasingly apparent that, contrary to the Company's promises, Mr. Allan was not merely a consultant but, in fact, acting in supervisory role over Ms. Gotthelf in violation of her agreement. Not only was Mr. Allan giving Ms. Gotthelf directions, but he was also becoming more threatening and abusive.

72. For instance, in June 2019, the NY Post published an online story that E. Jean Carroll, a former Elle columnist, had accused President Trump of rape. Mr. Allan wrote to Ms. Gotthelf that "it [the story] should be removed." Ms. Gotthelf disagreed. Mr. Allan responded – ominously – "I advise you again. Remove it." Minutes later, Mr. Allan wrote Ms. Gotthelf

11

again, directing her to "get rid of it," labelling Ms. Carroll either "the world['s] unluckiest woman or a liar" and her claims of rape "baseless shit."

73. Ms. Gotthelf went to Mr. Allan's office to discuss his directive. Mr. Allan became abusive, telling Ms. Gotthelf to "get it [the story] fucking down."

74. Ms. Gotthelf protested to News Corporation's CEO, Thompson, and Head of HR, Ritzcovan, that she was not supposed to be reporting to Mr. Allan.

75. They responded that if Mr. Allan "tells you to do something, you do it."

XI. **"WHAT HAPPENED BETWEEN YOU AND COL?"**

76. In January 2022, the Company effectively demoted Ms. Gotthelf.

77. It announced that Defendant Poole would become Editor-in-Chief of the New York Post Group. Mr. Poole was previously employed at the London Sun, another Murdoch property.

78. As result, Ms. Gotthelf would no longer formally report to the NY Post's publisher.

79. Mr. Allan remained at the NY Post to transition Mr. Poole into his new position as Ms. Gotthelf's boss. Mr. Allan ominously wished Ms. Gotthelf "luck" as "he ha[d] been asked to spend two weeks with Keith [Poole] briefing him. Just another page in the folder."

80. Mr. Poole wanted to know what happened between Mr. Allan and Ms. Gotthelf. In the summer of 2021, he asked one of Ms. Gotthelf's colleagues, who stated he did now know.

81. In November 2021, Mr. Poole invited Ms. Gotthelf to a lunch meeting to discuss her contract, which was set to expire and had to be renewed. At the lunch, however, Mr. Poole did not discuss Ms. Gotthelf's responsibilities or the renewal. Rather, he wanted to know "what

happened between you and Col?" Ms. Gotthelf explained that Mr. Allan had sexually propositioned her and that she did not want to go through that again.

82. On January 12, 2022, only two months later, Mr. Poole fired Ms. Gotthelf without cause.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of NYSHRL)**

83. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

84. By the actions described above, Defendants discriminated against Plaintiff based on her sex in violation of the NYSHRL.

85. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

86. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

87. Defendants' discriminatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYSHRL.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of NYSHRL)**

88. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

89. By the actions described above, Defendants retaliated against Plaintiff for protesting discrimination on the basis of her sex in violation of the NYSHRL.

90. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

91. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

92. Defendants' retaliatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYSHRL.

### THIRD CAUSE OF ACTION
### (Discrimination in Violation of NYCHRL

93. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

94. By the actions described above, Defendants discriminated against Plaintiff based on her sex in violation of the NYCHRL.

95. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

96. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but

not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

97. Defendants' discriminatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYCHRL.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of NYCHRL)**

98. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

99. By the actions described above, Defendants retaliated against Plaintiff for protesting discrimination on the basis of her sex in violation of the NYCHRL.

100. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

101. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

102. Defendants' retaliatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYCHRL.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against the Defendants for the following relief:

A. A declaratory judgment that Defendants violated state and city laws;

B. An award of economic damages;

C. An award of compensatory damages;

D. An award of punitive damages;

E. Prejudgment interest on all amounts due;

F. An award of reasonable attorneys' fees and costs; and

G. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 18, 2022
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
Douglas H. Wigdor
Valdi Licul

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com

*Counsel for Plaintiff*

16